## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## COURT FILE NO.: _____

| | |
|---|---|
| Amber M. McConaughy,<br><br>                    Plaintiff,<br>v.<br><br>Hunter Warfield, Inc.,<br><br>                    Defendant. | **COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

For her Complaint against Hunter Warfield, Inc., Amber M. McConaughy states and alleges as follows based on her personal knowledge, on investigations of counsel, and otherwise on information and belief:

### INTRODUCTION

1.    This is a lawsuit to recover damages arising from Hunter Warfield Inc.'s violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692 *et seq.*

### PARTIES

2.    Plaintiff Amber M. McConaughy (hereinafter "Plaintiff") is a natural person residing in the State of Minnesota.

3.    Defendant Hunter Warfield Inc. (hereinafter "Defendant") is a business corporation organized under the laws of the State of Florida with its chief executive offices in Tampa, Florida.

1

## JURISDICTION AND VENUE

4.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k.

5.     Venue lies in this district pursuant to 28 U.S.C. § 1391b(2) because Defendant falsely represented a debt to an individual in the jurisdiction of this Court and communicated false credit information to a credit reporting agency causing harm to an individual in the jurisdiction of this Court, giving rise to Plaintiff's claim under the FDCPA.

6.     This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in the State of Minnesota and Defendant violated Plaintiff's rights under the FDCPA in the State of Minnesota.

## FACTUAL ALLEGATIONS

### *The Court Order*

7.     Plaintiff rented a unit at Braham Meadows Apartments (hereinafter "Braham Meadows") in Braham, Minnesota.

8.     Plaintiff rented and used the Braham Meadows unit as a personal residence.

9.     Plaintiff paid a security deposit of $263.00 to Braham Meadows.

10.     The security deposit was submitted to cover Braham Meadows in the event Plaintiff caused damage to the apartment unit.

11.     Plaintiff moved out on approximately June 30, 2012.

12.     After Plaintiff moved out, a month passed, and Plaintiff still had not received her security deposit or an accounting thereof.

13.     On or around August 7, 2012 Plaintiff filed a claim in Minnesota State Court, 10
        Judicial District, Isanti County, Conciliation Division stating that her security deposit
        was not properly accounted for and returned.

14.     The Court File Number is 30-CO-12-199.

15.     A trial over Plaintiff's security deposit took place on November 19, 2012.

16.     At the trial, Braham Meadows appeared and presented documentation that it alleged
        supported a claim for damages against Plaintiff arising from damage to the apartment
        unit.

17.     At the trial, Braham Meadows argued that it was not required to return Plaintiff's
        security deposit because Plaintiff owed them for damage to the apartment.

18.     At the trial, Braham Meadows presented documents to the judge

19.     The documents contained bills totaling thousands of dollars.

20.     At the trial, Braham Meadows also provided Plaintiff with copies of the documents that
        it submitted to the judge.

21.     A true and correct copy of the documents that Braham Meadows presented at trial to
        the judge are attached as Exhibit 1.

22.     On November 21, 2012, the court issued an Order for Judgment on Claim and
        Counterclaim in Plaintiff's case against Braham Meadows.

23.     A true and correct copy of the Order for Judgment on Claim and Counterclaim is
        attached as Exhibit 2.

24. The judge ruled in favor of Plaintiff, noting in the memorandum section of the Order for Judgment on Claim and Counterclaim that "Defendant failed to give Plaintiff notice of damages within the required time."

25. The judge ordered Defendant to pay Plaintiff a $116.00 rent credit that was owed to her; the entire $263 damage deposit; and a $100 penalty.

26. The judge's Order was stayed until January 5, 2013 to permit Defendant time to appeal by removal to the district court.

27. Defendant did not appeal.

### *Defendant's Debt Collection Actions*

28. On April 28, 2014, Plaintiff requested copies of her credit reports.

29. Plaintiff's Experian and Equifax reports contained a negative tradeline from Defendant.

30. On information and belief, on some date between January 5, 2013 and April 28, 2014, Braham Meadows hired Defendant to attempt to collect its previously adjudicated damages claim against Plaintiff.

31. The negative credit reporting by Defendant was a representation by Defendant that Plaintiff owed Braham Meadows damages despite the previous finding to the contrary by the Conciliation Court judge.

32. At the time Plaintiff first received her credit reports showing Defendant's negative representation against her on April 28, 2014, Plaintiff had not heard of Defendant.

33. Plaintiff then called Defendant to determine why it posted a negative item on her credit reports.

4

34.   Defendant explained to Plaintiff on the phone that it received a collection assignment from Braham Meadows for damages.

35.   Plaintiff told Defendant that the matter went to court and that there was a trial over the security deposit.

36.   Plaintiff told Defendant that the court had ruled in her favor.

37.   Plaintiff sent Defendant a copy of Exhibit 2.

38.   Defendant informed Plaintiff that they would contact Braham Meadows to confirm the status of the debt.

39.   In a subsequent phone call, Defendant informed Plaintiff that it had checked with Braham Meadows and that Braham Meadows instructed Defendant to continue to attempt to collect damages from Plaintiff, the Conciliation Court's Order to the contrary notwithstanding.

40.   Defendant represented to Plaintiff that she was still obligated to pay damages for the Braham Meadows residential unit and that it would continue to represent the same to credit reporting agencies.

41.   Plaintiff discovered through a credit report obtained in December 2014 that, true to its word, Defendant had continued to represent to credit reporting agencies that Plaintiff owed damages for the Braham Meadows unit in contravention of the Conciliation Court's Order.

42.   Defendant's false and negative representations to the credit reporting agencies have caused Plaintiff numerous problems.

5

43.    Plaintiff applied for tenancy at two residences in spring of 2014 and was denied based on the negative and false information communicated by Defendant to the credit reporting agencies.

44.    Plaintiff almost became homeless as a result of Defendant's negative credit reporting; the fear of having no place to go for shelter for herself and her children caused her substantial mental and emotional distress.

45.    Ultimately, Plaintiff obtained a lot to rent at a mobile home park in Princeton, Minnesota, but she was required to have a co-signer for the lot and borrow money from a family member to purchase the structure on the lot.

46.    Defendant's continued false and negative credit reporting has greatly restricted Plaintiff's access to housing and forced her to pursue costly alternatives and suffer great embarrassment.

47.    The loss of personal and family security and independence continues to cause Plaintiff great distress and financial loss.

48.    Plaintiff also missed out on an employment opportunity because of Defendant's negative tradeline.

49.     In the summer of 2014, Plaintiff applied for a job at Premier Bank in Blaine, Minnesota.

50.    Plaintiff made it through the entire interview process.

51.    Premier Bank asked Plaintiff what day she was available to begin work, and Plaintiff understood this to mean that she had satisfied all criteria for employment.

52.   Premier Bank later informed Plaintiff that they were unable to offer hire her because of Defendant's negative reports to credit reporting agencies.

53.   Plaintiff suffers from a mental illness.

54.   Defendant's decision to continue to report the false damages claim against her has negatively impacted her credit and employment prospects and caused her substantial mental distress.

55.   Defendant violated 1692e(2)(a) by falsely representing that Plaintiff owed the debt.

56.   Defendant violated 1692e(8) by continuing to report the debt to credit reporting agencies after Plaintiff sent them the court Order showing that Braham Meadows' alleged damages had been rejected in a prior action over Plaintiff's security deposit.

## TRIAL BY JURY

57.   Plaintiff is entitled to and hereby demands a trial by jury pursuant to the Seventh Amendment to the Constitution and Federal Rule of Civil Procedure 38(b).

## CAUSE OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

58.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

59.   Defendant violated 15 U.S.C. § 1692e(2)(A).

60.   Defendant violated 15 U.S.C. § 1692e(8).

61.   Plaintiff has suffered mental distress as the direct and proximate result of Defendant's violations of the FDCPA.

62.     Plaintiff is entitled to recover from Defendant actual damages, additional damages as

the court may allow, costs, and attorney's fees as provided by the FDCPA, 15 U.S.C. §

1692k(a)

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that a judgment and order be entered against

Defendant as follows:

- for actual damages, as provided by the FDCPA;
- for additional statutory damages of $1,000, as provided by the FDCPA;
- for reasonable costs and attorney's fees, as provided by the FDCPA; and
- for such other and further relief as may be just and proper.


Dated this 2nd day of February, 2015.        Respectfully submitted,

By:/s Nicholas R. Nowicki
Brandon T. McDonough, Esq.
Attorney I.D. #:  0393259
Nicholas R. Nowicki, Esq.
Attorney I.D. #: 0395038
MCDONOUGH & NOWICKI PLLC
3011 36th Avenue South, Suite 6
Minneapolis, Minnesota 55406
Telephone: 612-217-0259
brandon@mcnowick.com

**ATTORNEYS FOR PLAINTIFF**